DANIEL A. HIGGINS, Respondent, v. THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, Appellant.

Under the act of 1887 (Chap. 464, Laws of 1887) to secure to honorably-discharged Union soldiers and sailors a preference for appointment and employment in the public departments and works, the only obligation a city owes to an appointee is to pay him his compensation for the services he renders while in office and employed. The municipality is not made liable for any violation of its provisions.

The act imposes a personal duty upon public officials having the power of appointment, and subjects them to penal consequences if they disregard or violate the provisions of the act.

Plaintiff, an honorably-discharged soldier, was appointed by the mayor of the city of New York to a position as laborer at a fixed per diem compensation; he was thereafter discharged and another appointed in his place; he instituted legal proceedings for his re-instatement, which resulted in his favor and he was thereupon re-employed. During the period between his discharge and re-employment the person appointed in his place performed the work and was paid therefor by the city. *Held,* that an action was not maintainable to recover the stipulated wages during that period; that the city was not bound to make any compensation to him for the time he was not in actual service.

(Argued January 21, 1892; decided February 9, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made May 15, 1891, which directed judgment for plaintiff upon the verdict directed at Circuit on exceptions directed to be heard in the first instance at the General Term.

The facts, so far as material, are stated in the opinion.

*D. J. Dean* for appellant. It was error for the trial court to withhold from the jury the question as to whether plaintiff understood that he was suspended or discharged, and all that the said question implies. (*McCoy* v. *Mayor, etc.*, 11 N. Y. S. R. 505; *Gregory* v. *Mayor, etc.*, Id. 506; 113 N. Y. 416.) No action for his wages, by the plaintiff, can lie against this defendant, and the refusal of the court to direct a verdict for the defendant was error. (*Dolan* v. *Mayor, etc.*, 68 N. Y. 278; *McVeany* v. *Mayor, etc.*, 80 id. 185; *Terhune* v. *Mayor,*

*etc.*, 88 id. 247; *Mott* v. *Connelly*, 50 Barb. 516; *U. S.* v. *Addison*, 22 How. [U. S.] 174; *People ex rel.* v. *Miller*, 2 Mich. 459; Code Civ. Pro. § 1953.)

*John Jeroloman* for respondent. The plaintiff being an honorably-discharged Union soldier of the late war, was entitled to a preference for employment and retention in employment, and, therefore, his removal was illegal. (Laws of 1887, chap. 464; *O'Connor* v. *Adams*, 53 Hun, 141; *Sullivan* v. *Gilroy*, 55 id. 285; *Washburn* v. *French*, 52 id. 464, 466.) The removal or suspension of the plaintiff was in violation of chapter 464 of the Laws of 1887, and so found by the court. (Code Civ. Pro. § 2087; 55 Hun, 285.) The plaintiff's suspension or removal was in violation of the Laws of 1887, and, therefore, he is entitled to recover his wages from the 7th of March, 1889, until February 12, 1890. (*Howard* v. *Day*, 61 N. Y. 362; *Everson* v. *Powers*, 89 id. 527.) The legislature intended that veterans of the late war should be given a preference for employment over all others not honorably-discharged Union soldiers, whether the employment was permanent or temporary. (*O'Connor* v. *Adams*, 51 Hun, 141; *Sullivan* v. *Gilroy*, 55 id. 285; *Washburn* v. *French*, 52 id. 464.) The plaintiff having once been employed by the defendant, obtained a vested right or preferment to retention in the public service. (Laws of 1887, chap. 464.) The proof presented by the plaintiff relative to the peremptory writ of mandamus being the original writ, and the papers on which it was based, directing the mayor of the city to reinstate plaintiff, were properly read in evidence. (*McVeaney* v. *Mayor, etc.*, 80 N. Y. 185; *Nichols* v. *McLean*, 101 id. 527; *Chase* v. *Chase*, 95 id. 373; *Moore* v. *City of Albany*, 98 id. 410.) When an employe is suspended or leave of absence given him, he is excused from service and entitled to his compensation at the agreed rate, notwithstanding he does no work. (*O'Leary* v. *Board of Education*, 93 N. Y. 1; *Gregory* v. *Mayor, etc.*, 113 id. 416; *Berg* v. *Carroll*, 30 N. Y. S. R. 675; *Morley* v. *Mayor, etc.*, 35 id. 262; *Howard* v. *Daly*, 61 N. Y. 362;

*Everson* v. *Powers*, 60 How. Pr. 166; 89 N. Y. 527; *Martin* v. *Platt*, 51 Hun, 434; *Price* v. *Keyes*, 1 id. 181, 182; *M. N. Bank* v. *Sirrit*, 97 N. Y. 320.) The illegal discharge or suspension of the plaintiff by the mayor operated as a leave of absence, and excused plaintiff from all obligation to perform, or report for duty. (*Howard* v. *Daly*, 61 N. Y. 362.) The mayor had no power to discharge the plaintiff, and if he rendered no services until the fourteenth day of February thereafter, it was because of the act of the defendant. It was compulsory idleness, if at all, and it was caused by the wrongful act of the defendant. (*Berg* v. *Carroll*, 30 N. Y. S. R. 675; Wood on Master & Servant, § 144.) The Veteran Acts (Chap. 312, Laws of 1884; chap. 410, Laws of 1884; chap. 29, Laws of 1886, and chap. 464, Laws of 1887) are constitutional. (*In re Byrnes*, 50 Hun, 203; *Sullivan* v. *Gilroy*, 55 id. 285; *In re Wortman*, 22 Abb. [N. C.] 137; *Kerrigan* v. *Force*, 68 N. Y. 381.)

GRAY, J. The plaintiff, an honorably-discharged Union soldier, has recovered judgment against the city of New York for wages, alleged to be due him between certain dates. It appears that he had been appointed by the mayor of the city, in 1888, as laborer at the dog pound, at a fixed compensation of two dollars a day. In March, 1889, the mayor terminated the employment and appointed another person in the plaintiff's place. Thereupon he instituted legal proceedings to compel his reinstatement by the mayor, on the ground that he was an honorably-discharged Union soldier of the late war and entitled as such to a preference for appointment and employment in the office from which he had been removed. Succeeding in the proceeding, he was re-employed in February, 1890, and then commenced this action to recover his wages during the period he was unemployed. During the time he was out of his position, the other appointee of the mayor performed all the duties and was paid therefor by the city.

We fail to see any ground for an action against the city, and the appeal should prevail. The theory upon which the

plaintiff's recovery has been upheld below is, substantially, that the employment of the plaintiff was in the nature of a contract, by virtue of which the city became bound for his stipulated compensation, if he was unlawfully discharged, during the time he was necessarily unemployed. Such a contract was supposed to result in consequence of the provisions of the act of the legislature contained in chapter 464 of the Laws of 1887, passed to secure to honorably-discharged Union soldiers and sailors a preference for appointment and employment in the public departments and works of the state, and of its cities, towns and villages.

I am quite unable to perceive how such a result follows, as any consequence of the operation of that law. The first section of the act provides for the preference upon the public works, and in non-competitive examinations under the civil service laws, where they apply, and the second section prescribes as follows, viz.: "All officials or other persons having power of appointment to, or employment in, the public service, as set forth in the first section, are charged with a faithful compliance with its terms, both in letter and spirit, and a failure therein shall be a misdemeanor." The effect of this legislation was to impose a personal duty upon the public officials to carry out the provisions of the law, and to subject them to penal consequences, if those provisions were disregarded or violated. The appointee acquiring office or employment under this law, of course, enters into certain relations with the municipality and gains the legal right to be paid by it for the services he renders; but it is not easy to understand how the resultant relations of the employe, can be deemed to rest upon, or to be regulated by, any contract by the city. It is not very important, perhaps, to discuss that feature of the case at any length. The question is, upon what legal principle can he hold the city, in the case of his removal, liable to make any compensation to him for the time he was not in its actual service?

There is no intention deducible from the act that the municipality is to be made liable for any violation of its pro-

visions. The very existence of the provision in the law for the case of a failure by an official to faithfully comply with its terms, would seem to effectually negative that idea. To uphold the right to recover from the municipality, for a time when the plaintiff was not serving it, and when another was rendering the particular services, would certainly amount to visiting upon the city the consequences of the violation by its officer of a law, which was meant to regulate and control his conduct in making appointments; as it would likewise be in violation of the usual legal rule of liability in such cases.

I think that this case is governed by the decision of this court in *Terhune* v. *Mayor, etc.* (88 N. Y. 247). The fact that there the plaintiff held a public salaried office, while here the plaintiff was employed rather in the capacity of a laborer, at a compensation fixed at a daily rate, is of no very evident effect upon the legal question of the city's liability. It was held in the *Terhune* case that the plaintiff could not recover against the city for his salary during the period when, having been illegally removed, his office was filled and his salary was paid to another appointee. The principle of the decision was that the payment to a *de facto* officer is a defense to an action brought by the *de jure* officer to recover the same salary. How was it here? The plaintiff claimed the right to a particular position in the public service, to which he had been duly appointed, and from which he claimed to have been unlawfully removed, and which was filled by another. He succeeded in establishing his claim and secured a reinstatement in his former employment. Does the reason for the rule stated in the *Terhune* case not exist quite as strongly for its enforcement in the present case? In my judgment it does. With respect to any effect, which this act of 1887 has upon the question, I think it may be said, generally, that the only obligation under which the city comes to an appointee under its provisions is to pay him his compensation for the services, which he renders while in office and employed. Its only relations are to the appointee as such, and it is not in the least degree legally concerned with him, or with his grievance, if he has lost his office

or employment by the wrongful or illegal act of the person possessing the power of appointment. The municipality must pay for the services rendered to it, on principles of liability quite unconnected with this act. Where no services are rendered, it is not conceivable that an obligation is imposed by law upon the city with respect to compensation.

As the result of these views, the order of the General Term and the judgment entered upon the verdict for the plaintiff, by its direction, should be reversed and a judgment entered dismissing the complaint, with costs.

All concur, except MAYNARD, J., taking no part.

Judgment reversed and judgment accordingly.