### FISHER v. CITY OF MECHANICVILLE.

(Supreme Court, Appellate Division, Third Department. May 3, 1916.)

1. MUNICIPAL CORPORATIONS ⚖220(1)—CONSTRUCTIVE SERVICES—PUBLIC POLICY.

It is against public policy and sound morals to pay for constructive services to a municipality.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 599, 603, 606;. Dec. Dig. ⚖220(1).]

2. MUNICIPAL CORPORATIONS ⚖149(5)—VILLAGE ATTORNEY—RECOVERY OF SALARY—STATUTES.

Plaintiff, in March, 1915, pursuant to the charter of Mechanicville, was employed or appointed village attorney at an annual salary of $750, the statute only inferentially fixing the term at one year and there being no special contract of hiring for one year, and in June of that year, Laws 1915, c. 170, created the city of Mechanicville and required it to appoint a city attorney and to fix his salary, which was done. *Held*, in plaintiff's action in contract to recover the balance of his annual salary, that whether he was an officer of the village, or was employed on a general retainer, was immaterial; that his employment under the village charter was subject to the legislative power of alteration or repeal; and that when the Legislature created the city, it terminated his employment, so that he could not recover against the city.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 332; Dec. Dig. ⚖149(5).]

3. MUNICIPAL CORPORATIONS ⚖162(5)—LEGAL SERVICES—PERFORMANCE.

In such case, where plaintiff made no offer to the city to perform the services which he claimed to have contracted to perform for the village, and where the city attorney had performed the legal services for defendant and been paid therefor since his appointment, the plaintiff could not recover.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 364; Dec. Dig. ⚖162(5).]

Cochrane and Howard, JJ., dissenting.

Appeal from Saratoga County Court.

Action by Robert W. Fisher against the City of Mechanicville. From a judgment of the county court for plaintiff, the defendant appeals. Reversed, and new trial granted.

For opinion below, see 157 N. Y. Supp. 518.

Argued before KELLOGG, P. J., and LYON, HOWARD, WOODWARD, and COCHRANE, JJ.

Edward C. McGinity, of Mechanicville, for appellant.
Robert W. Fisher, of Mechanicville, in pro. per.

⚖For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

WOODWARD, J. The plaintiff, after alleging jurisdictional facts, sets forth the incorporation of the village of Mechanicville under the provisions of chapter 106 of the Laws of 1891, and its continuance in being until the enactment of chapter 170 of the Laws of 1915, under which the city of Mechanicville was created out of the territory and inhabitants previously constituting said village. He then alleges that on or about the 16th day of March, 1915, the said village of Mechanicville entered into a contract with the plaintiff, wherein and whereby the plaintiff agreed to render legal services to said corporation for the period of one year from that date, and for which services so to be rendered by him said corporation agreed to pay to the plaintiff the sum of $750; that the plaintiff thereupon entered upon the performance of said contract, and well and faithfully performed all of the services by the provisions of said contract by him to be performed, and continued in such performance until the 23d day of July, 1915, upon which said date, and without any cause whatever, the defendant wrongfully discharged the plaintiff from said contract, and wrongfully refused to accept the services so contracted for, to the damage to the plaintiff in the sum of $562.50. The plaintiff then alleges the filing of a claim under the provisions of the charter and the rejection of the same by the defendant, and demands judgment for the amount of the salary which he would have earned if permitted to perform. The answer of the defendant denies the making of the contract alleged in the complaint, as well as the alleged wrongful discharge and the performance of services, and sets up two affirmative defenses.

The first affirmative defense alleges the prior existence of the village of Mechanicville, the appointment of the plaintiff to the office of village attorney, the performance of the duties as such until the erection of the city of Mechanicville on the 29th day of June, 1915, which thereupon became the successor of the village of Mechanicville, and the provisions of the charter of the city of Mechanicville, which provided that the council of said city should appoint for a term of two years a city attorney and fix his salary. It is then alleged that the council of said city did, upon the 29th day of June, 1915, duly appoint a city attorney and fix his salary, and that said attorney thereupon duly qualified and entered upon the duties of his office, and that such city attorney has continued to perform such services, and has been paid the salary provided therefor up to the date of the present action.

The second defense alleges payment for all services rendered by the plaintiff either to the village of Mechanicville or its successor, and there appears to be no dispute that the plaintiff has been paid for all services which he has actually rendered. The one question here is whether the plaintiff, the form of whose action is for damages, may collect as upon a contract the amount which it is claimed was promised him in consideration of his services as village attorney; that position having been abolished by the enactment of chapter 170 of the Laws of 1915.

[1, 2] The plaintiff's theory is that he had a contract of such a character that it survived the enactment of the charter of the city of Mechanicville, and became a charge against the defendant, notwithstanding the fact that the village of Mechanicville ceased to have any ex-

istence under the laws of this state upon the creation of its successor corporation, the defendant in this action. The defendant, on the other hand, contends that the plaintiff was an officer of the village of Mechanicville, and that when the Legislature, pursuant to its reserved powers, substituted the city of Mechanicville for the village of Mechanicville, the office was abolished and a new one created, and that the plaintiff has no cause of action against the defendant.

The plaintiff cites as controlling authorities Potter v. City of New York, 59 App. Div. 70, 68 N. Y. Supp. 1039, and Bell v. City of New York, 46 App. Div. 195, 61 N. Y. Supp. 709, and if he is right in his position, there is an end of this appeal. It is important, therefore, to consider these cases in the light of the general rule that it is against public policy and sound morals to pay for constructive services. Howard v. Daly, 61 N. Y. 362, 373, 19 Am. Rep. 285; Higgins v. Mayor of New York, 131 N. Y. 128, 132, 30 N. E. 44, and authority there cited. The plaintiff does not allege that he held himself in readiness to perform, or that he in fact performed, any services for which he has not been compensated, and if he may recover the amount of salary or wages agreed upon in his alleged contract, or treat the contract as still subsisting, then it was his duty to remain idle in order that he might always be ready to perform the service. Howard v. Daly, supra. In the view we take of this case it does not seem important to determine whether the plaintiff was an officer of the village of Mechanicville, or whether, as claimed by the plaintiff, he was a lawyer employed on a general retainer, for the rule in either case is the same. Abrams v. Horton, 18 App. Div. 208, 209, 45 N. Y. Supp. 887; Higgins v. Mayor of New York, 131 N. Y. 128, 132, 30 N. E. 44, and authority there cited. If it were essential to the case, we should be inclined to hold that the plaintiff was not an officer of the village of Mechanicville, as its charter appears to exclude the position from among its list of officers (Charter, tit. II, § 1), and we will treat the question from this viewpoint.

The record shows that under the charter of the village of Mechanicville it was the duty of the trustees (Laws 1891, c. 106, § 3, subd. 6, as amended by Laws 1906, c. 84, § 4), to "appoint annually an attorney and pay such attorney a reasonable annual salary," and that on the 16th day of March, 1915, the trustees being in session, it was on motion duly carried "that the board of trustees ballot by roll call, the clerk to call the roll, and each member of the board respond by naming the candidate for whom he proposes to cast his ballot," and that the roll call for village attorney showed four votes for the plaintiff as against two for another individual. It likewise shows that the same meeting adopted a resolution fixing the salaries at the same amount as for the year previous, and that the salary for village attorney for the previous year was $750. The net result of this transaction was, under the statute, an appointment of the plaintiff at an annual salary of $750. The statute only inferentially fixes the term at one year, and it may be fairly questioned whether this was not a mere hiring at will, the village being obligated to pay only for such services as were actually rendered. Martin v. Insurance Company, 148 N. Y. 117, 121, 42 N. E. 416. At any rate there is no special contract of hiring for one year, merely an

appointment under the provisions of the statute, and a performance of the contract so long as the statute remained in force, and no performance, or offer of performance, subsequent to the repeal of the charter of the village of Mechanicville by the enactment of the charter of the city of Mechanicville, embracing the same territory and inhabitants. Is this such a contract as that involved in Potter v. City of New York, 59 App. Div. 70, 68 N. Y. Supp. 1039, relied upon by the respondent? In Potter v. City of New York, supra, the contract was made under the provisions of an act entitled "An act to provide for the construction of sewers in any incorporated village of this state" (Laws of 1889, c. 375), and this act specially provided that the sewer commissioners provided for in the act (section 2) should have power to—

"employ a supervising engineer to superintend and inspect the construction of any sewers or works connected therewith authorized to be constructed by this act, and to pay him a compensation not exceeding ten dollars per day, and such other inspectors as may be necessary, and to pay them a compensation not to exceed two and one-half dollars per day each, which shall be included in the estimate of the expenses of the construction of the same, and shall be paid as a portion thereof." Laws 1889, c. 375, § 13.

Acting under this authority, the commissioners entered into a contract with the plaintiff to make a survey of the village, to prepare plans and specifications, make profiles of streets, to recommend the best system of sewers, and all of the detailed arrangements for the construction of a sewer system, and "to superintend and inspect, as supervising engineer, the construction of any sewers authorized to be constructed within a year from the date of the letting of the contract." The board of sewer commissioners bound itself to pay the plaintiff the sum of $10 per day in consideration of the performance of the specified work, and the plaintiff duly performed all of the conditions of the contract, his plans and specifications being accepted by a vote of the taxpayers under the provisions of the statute, until he was dismissed by the sewer commissioners in August of 1897, the work being completed in February, 1898. It was in that case admitted that the plaintiff notified the commissioners that he stood ready to perform his services to the completion of the work.

It must be entirely obvious that the contract made with the plaintiff in the above action was an entire contract, not only for the furnishing of the plans and specifications, but for the superintending and inspection of the work, and the question of the time of the employment was not involved. He was to have $10 per day for the entire work of furnishing the plans and specifications and for the superintending and inspection of the construction of the sewer system, and the defendant was not at liberty to accept the plans and specifications, involving high technical skill and training, and then dismiss the plaintiff, paying him only the per diem rate agreed upon for the days actually employed. This is clearly indicated by the opinion of the court, and, the action being brought against the city of New York, as the successor in liability to the village of Far Rockaway, was properly concluded in favor of the plaintiff. In that case the Legislature had not repealed the statute, either expressly or by implication; it had recognized and continued the general statute under which the contract was made, and had simply

turned over the liability to the city of New York, which had been enlarged to embrace the territory formerly known as Far Rockaway. The law and the contract remained identically as it was at the time it was made, the city of New York was put into the place of the village of Far Rockaway, and the question presented there was merely whether the plaintiff was hired at the will of the sewer commissioners at $10 per day, or whether the compensation was to be measured by the performance of the entire contract, and the court held the contract to cover the entire work of construction, at so much per day for the time employed, and this was right; but it does not cover the plaintiff's case in the present action. He took his employment under the charter of the village of Mechanicville, with the power in the Legislature to alter or repeal such statute, and when the Legislature exercised this power and created the city of Mechanicville it operated to terminate the employment. Taft v. Adams, 3 Gray (Mass.) 126, 130; Chase v. City of Lowell, 7 Gray (Mass.) 33, 35; Butler v. Pennsylvania, 10 How. 402, 13 L. Ed. 472; Crenshaw v. United States, 134 U. S. 99, 108, 10 Sup. Ct. 431, 33 L. Ed. 825.

We come then to the case of Bell v. City of New York, supra, where the plaintiff sued to recover her salary from September 1, 1895, to September 1, 1896, as librarian of a school district formerly in the town of East Chester, which was taken into the city of New York under the provisions of the Annexation Act passed in 1895. The plaintiff in that case was employed under the provisions of a statute which provided for the establishing of free schools in school district No. 4 in the town of East Chester, Westchester county, and which provided that "said board of education shall appoint a district librarian and a clerk to the board of education." No term was here suggested, and the plaintiff merely sought to recover for services actually performed, she having been permitted to continue the employment after the enactment of chapter 934 of the Laws of 1895, under which the town of East Chester was annexed to the city of New York. The city of New York took over the contract, and by resolution ratified the same and permitted the plaintiff to continue her work as librarian, actually paying her salary for the months of June, July, and August, under her original contract, and then sought to avoid the payment for services actually rendered, upon the theory that the Annexation Act, so called, had terminated the employment, the plaintiff being a public officer. The court very properly held that the plaintiff was not a public officer, and that, having performed the employment to which she had been appointed, with the actual consent of the city of New York, succeeding to the rights, duties, and obligations of the town of East Chester, she was entitled to be paid. The court, after pointing out the special provisions of the Annexation Act, say:

"If, therefore, the contract of the board of education of East Chester was legal and binding upon that town, it would seem to follow that the city became liable for its performance."

The Annexation Act did not repeal the special statute under which the board of education was organized and directed to appoint a librarian, and the decision goes no further than to hold that where a town

or board of education has appointed a person to an employment for an indefinite period, and such employment has been performed with the consent of the successor to the duties and obligations of such town or board of education, there is a legal liability for the services so rendered. This lacks much of holding that a man appointed as the attorney of a village may, without performing any services, or offering to do so, charge an entirely different corporation with the payment of a salary which he might have earned if the village had continued in existence.

[3] In the case at bar the plaintiff made no offer to the city of Mechanicville to perform the services which he claims to have contracted to furnish to the village of Mechanicville. He does not claim to have performed any such services, and it does not appear to be disputed that the city attorney of the city of Mechanicville has performed the services of an attorney for the defendant, and has been paid therefor during all of the time since the city came into being; and, under such circumstances, the case is within the principle laid down in Terhune v. Mayor, 88 N. Y. 247, and Higgins v. Mayor of New York, 131 N. Y. 128, 132, 30 N. E. 44. Section 110 of chapter 170 of the Laws of 1915 provides that:

"On the second Tuesday after the first general municipal election in the year 1915, at nine o'clock in the forenoon, the offices and terms of office of the boards of trustees, and of all other officers, boards or commissions or appointees or employés of any of said boards, officers or commissions of the village of Mechanicville, shall terminate and their powers and duties devolve on the appropriate officers of the city of Mechanicville, as provided in this act, in so far as the same or similar powers and duties are continued or modified by this act."

We think the authorities relied upon by the respondent are not controlling; that they deal with different conditions from those presented in the instant case, and that neither in morals, ethics, or in law is he entitled to recover for services which he has not rendered. When the plaintiff took his employment from the village of Mechanicville, he took it knowing that the Legislature had the right to repeal the charter of the village and to create a new municipal corporation in its place, and his contract of employment could not extend beyond the life of the corporation making it. It was perfectly good and valid so far as performed, but when the sovereign power terminated the corporation, the employment came to an end, and there was no obligation on the part of the new corporation to pay for services for which it had no use, and which were not even tendered.

The judgment should be reversed and a new trial granted, with costs to the appellant to abide the event.

KELLOGG, P. J., and LYON, J., concurs.

COCHRANE, J. (dissenting). It is assumed and practically held by Mr. Justice WOODWARD in his opinion that the plaintiff was not an officer of the village of Mechanicville. That assumption I think is a sound one, and, if so, I am unable to discover any reason for the reversal of this judgment.

158 N.Y.S.—58

The charter of the village not only empowered and authorized its board of trustees, but explicitly made it "the duty of the board * * * to appoint annually an attorney and pay such attorney a reasonable annual salary." Under this statutory obligation the trustees of the village at a meeting on March 16, 1915, designated the plaintiff as village attorney, and by resolution fixed his salary "for the ensuing year," and the village president at such meeting declared the plaintiff appointed for one year, and he at such meeting accepted such appointment. This was not a hiring at will, but an employment for one year, under a statutory provision making it obligatory on the board of trustees to enter into such employment, and therefore the cases of Abrams v. Horton, 18 App. Div. 208, 209, 45 N. Y. Supp. 887, Higgins v. Mayor of New York, 131 N. Y. 128, 132, 30 N. E. 44, and Martin v. Insurance Company, 148 N. Y. 117, 121, 42 N. E. 416, cited in the prevailing opinion, have no application.

The contract having been for a fixed and definite term of one year pursuant to statutory requirement, it was not within the power of the officers of the village or of the newly formed city of Mechanicville, or of the Legislature itself, to annul that contract or abridge its term, and the Legislature could do so neither directly nor indirectly under the guise of a new charter transforming the village into a city. When the Legislature made Mechanicville a city, it did not thereby put to death the former municipality. A new village charter might have effected as radical a change as the city charter. The cases cited from other jurisdictions upholding the right of the Legislature to terminate an employment seem to refer to an employment of an officer constituting an inherent part of the municipal government as distinguished from an employé who merely works under a contract.

The plaintiff entered upon the performance of his duties as village attorney, and remained in the faithful performance thereof until after the city charter went into effect, when he was discharged and a city attorney appointed in his place, and he was directed to turn over to the new attorney the papers in his possession and to give stipulations of substitution, which he declined to do. His willingness and readiness to perform his contract were expressly admitted at the trial. The fact that another officer has been improperly appointed to supplant the plaintiff and has done the work which he was legally employed to do and been paid does not prevent a recovery by the plaintiff if he was an employé working under a contract for a definite term, and was willing and ready to perform that contract as the defendant admits. Terhune v. Mayor, 88 N. Y. 247, and Higgins v. Mayor of New York, 131 N. Y. 128, 132, 30 N. E. 44, are not applicable. In the first case the plaintiff was holding "a public salaried office." In the last case the plaintiff was removed and reinstated because he had been wrongfully removed in violation of civil service rules. In neither case did the plaintiff have a contract for a fixed and definite term.

I think, therefore, the judgment should be affirmed.

HOWARD, J., concurs.